## CIRCUIT COURT OF FAIRFAX COUNTY

International Income
Properties, Inc.

v.

Combined Properties
Limited Partnership

November 2, 1987

Case No. (Chancery) 99254

By JUDGE THOMAS A. FORTKORT

Landmark Center is a shopping mall conceived in 1960. The original developers claim to have coined the name. An archeologist from the City of Alexandria recalls that there was a circus on the property in the late fifties known as the Circus at Landmark. The Court did not find *this testimony* dispositive as no evidence exists from any other source to corroborate this mere remembrance. There is evidence to support the contention that the use of the name "Landmark" was first used by Landmark Center. There is further evidence to support the proposition that Landmark is currently a geographic name.

The testimony of the property manager and his secretary was that several people called because they were confused as to what stores were in Landmark Center as opposed to what stores were in Landmark Plaza. A survey commissioned by Landmark Center showed a plurality of citizens polled identified Landmark as a geographic area.

There are more than a dozen businesses that use the word "Landmark" as part of their business name. Landmark Plaza is the only other shopping center using the word Landmark in its name. The two shopping centers are in

very close proximity to one another, divided by Interstate 95 and fronting on Route 236.

Landmark Center is a regional shopping mall with major retail stores and several well-known smaller retail entities. Landmark Plaza is a medium-sized strip shopping center generally housing well-known discount stores. Basically, the two shopping centers appeal to different segments or shopping tastes of the consuming public. Both are providing a wide diversity of retail outlets in a convenient location with adequate parking. Landmark Center in its 1985 prospectus to the Securities and Exchange Commission does not list Landmark Plaza as a major competitor but only as a secondary market. Landmark Center cannot quantify any losses from the use of "Landmark" by Landmark Plaza.

Plaintiff seeks an injunction prohibiting defendant from continued use of the name "Landmark Plaza" for its discount shopping center. Plaintiff says the name is deceptively similar to the trade name of its retail shopping mall, "Landmark Center," and amounts to infringement.

## I. *Unfair Competition*

Two elements must be present to constitute unfair competition with respect to a trade name: (1) the name must have acquired a secondary meaning, and (2) the defendant has unfairly used the name or a simulation of it. *Rosso and Mastracco v. Giant Food*, 200 Va. 159, 164-65 (1958), quoting Annot., 150 A.L.R. 1067, 1076 (1944).

## A. *Secondary Meaning*

A name takes on a secondary meaning when the words have, in addition to their dictionary definition, an association with the particular product or business. Put another way: "secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156 (4th Cir. 1962). *See also, Rosso*, 200 Va. at 164 (definition of secondary meaning).

Plaintiff has been operating its shopping mall under the name "Landmark Center" since the early 1960's. Plain-

tiff's trade name has become so well associated with its business that now the area surrounding the mall is often referred to as Landmark. Defendant contends that extension of the designation to surrounding environs has made "Landmark" a geographically descriptive term available to anyone. In fact, argues Defendant, a multitude of other businesses use "Landmark" in their names. However, use of the term in the name of an apartment complex or a dry cleaner differs from defendant's use. Plaintiff cannot prohibit use of a geographic designation by anyone other than subsequent businesses in the same category. The "same category" in this case is shopping centers. Apartment complexes, office buildings, or even retail businesses competing with individual tenants of the plaintiff are not in the same category as plaintiff. Defendant as owner of a neighboring shopping center is. The fact that defendant features discount stores, while plaintiff leases to major department stores, is not sufficient to place it outside of the definition of "category." Plaintiff was first in time to appropriate the term "Landmark" to a shopping center; therefore, its right to the name is paramount over similar situations.

### B. *Unfair Use or Simulation*

The second element of unfair competition is defendant's unfair use of the name or a simulation thereof. "Unfair" is not necessarily synonymous with "intent to deceive." Use of the name is unfair *if it diverts* trade or confuses the public, results which may occur in spite of good faith on the part of the infringer. Therefore, plaintiff need not prove deception or fraudulent intent, *see*, *Eagle Clothes, Inc. v. Frankel*, 238 F. Supp. 8 (E.D. Va. 1964), but rather, only that the names are similar and confusing.

### II. *Confusion*

Once the requisite elements are present, the test for determining if the conduct rises to the level of unfair competition is whether the semblance between the trade name is so close as to confuse a prospective customer exercising ordinary caution in his dealings. *Rosso*, 200 Va. at 165. It is the *potential* for confusion which must be demonstrated, rather than *actual* confusion. In *Food*

*Fair Stores, Inc.*, 301 F.2d at 161, a federal court, applying Virginia common law in diversity, said: "The absence of any witness testifying that he had actually been deceived as a consumer does not refute the deceptive character of the . . . business." The Virginia Supreme Court postulates that the "judgment of the eye and ear" is more indicative of the potential to deceive than other evidence. *Rosso*, 200 Va. at 165. In the instant case, plaintiff has produced actual evidence of confusion even though the names themselves would no doubt meet the *Rosso* test.

Whether there is sufficient confusion to constitute unfair competition is a question of fact. *Id.* citing *Crump Co. v. Lindsay*, 130 Va. 144, 160 (1921). Applying the facts to this case: we have two shopping centers in close proximity; both border Route 236 and Interstate 95; both have shoe stores, clothing stores, drug stores, and restaurants, albeit the tenants in Defendant's Plaza are discount chains; both shopping centers have a Hechts; the potential for confusion is great. Applying the "eye and ear" test, the respective trade names sound similar. There is nothing in Plaza's name or appearance to connote "discount." Directions to the shopping centers are almost identical.

Defendant refers the Court to *Edmondson Village Theatre v. Einbinder*, 116 A.2d 377 (Md. 1955), [which] involved a movie theatre and a drive-in both using the geographic designation "Edmondson." The *Edmondson* case, however, is factually distinguishable from the matter before this Court. In *Edmondson*, the businesses were three miles apart instead of flanking opposite sides of an interstate. Furthermore, the difference between a drive-in and a movie house was obvious to the most naive of consumers. Since this distinction was reflected in the name, although both employed the word "Edmondson," no confusion was created.

The facts of *Edmondson* are responsible for the result. Applying the same principles of law set forth in the *Edmondson* opinion to the present controversy would call for a judgment in plaintiff's favor. The opinion cites *Dennison Mfg. Co. v. Thomas Mfg. Co.*, 94 F. 651, 659 (C.C.D. Del. 1899), for the proposition that when rivals have an equal right to use a word and one implements it before

the other, the latter will not be permitted to use the word in a way which might deceive the public. *Edmondson*, 116 A.2d at 380. The Maryland court also notes the principle that the *character* of the business must be considered when deciding whether an enterprise may employ a geographical name similar to that of a previously established business. *Id*. at 381. Although the Virginia Supreme Court has yet to address this issue, there are no decisions at variance with the notion that the first to appropriate a geographical name has a right to the name superior to those in the same line of trade. There is language in *Rosso* inferring that the Virginia high court would adopt this position as other jurisdictions have. *See, e.g., Edmondson Village Theatre v. Einbinder*, 116 A.2d 377 (1955) (discussed *supra*); *Lion's Head Homeowners Assoc. v. White Bridge Rd. Assoc.*, # 85-82-11 (Tenn. Ct. App. 1985) (apartment complex enjoined from using geographical designation in its name when confusion likely to result with neighboring condominiums already using the name). In deciding whether the word "giant" was a protected trade name, the *Rosso* court found no error in the trial court's refusal to admit testimony concerning the Giant Esso Center, a gas station. The litigants were both grocers. Neither traded in gasoline, so the fact that someone in a different trade used the word "giant" was of no consequence. *Rosso*, 200 Va. at 167. It is likely that the Court would treat use of the word Landmark in a similar fashion.

Mr. Dennis will submit an order embodying this opinion and permanently enjoining Landmark Plaza from using the word "Landmark" in its trade name.