## CIRCUIT COURT OF THE CITY OF RICHMOND

Cimarron's Old South Corp.

v.

Traveller's Alley Cafe, Inc.

January 31, 1990

Case No. N-8409-3

By JUDGE T. J. MARKOW

This case is before the court on a Bill for Temporary and Permanent Injunction.

This case is based upon a theory of unfair trade competition in the form of the appropriation of a business trademark. Plaintiff alleges that defendant infringes upon plaintiff's trade name, "Traveller's" or "Traveller's Restaurant", by use of the trade name "Traveller's Alley Cafe" for its cafe located on the same city block as plaintiff's restaurant. Plaintiff further alleges that because of the extreme proximity of Traveller's Alley Cafe to Traveller's Restaurant in addition to the closely related names similarity of signage and design of menus that the public, vendors, regular customers and even the United States Postal Service are confused by the names' similarity, and that plaintiff is irreparably harmed by that confusion.

The law in Virginia in respect to unfair competition in the use of trade names requires that the plaintiff establish the following two elements: that the name or portion of the name claimed to be protected has acquired a secondary meaning associated with the plaintiff and that the defendant has used the name unfairly to the detriment of the plaintiff. *Rosso & Mastracco, Inc. v. Giant*

*Food Shopping Center of Va., Inc.*, 200 Va. 159, 164, 104 S.E.2d 776, 780 (1958). Plaintiff carries the burden of proving his case "by a fair preponderance of evidence or by substantial evidence sufficient to show that the use of the trade name by another will result to the prejudice of the complainant." 200 Va. 159, 165, 104 S.E.2d 776, 780. "Each case must depend for its correct solution on its own peculiar facts and circumstances." *Crump Co. v. Lindsay*, 130 Va. 144, 160, 107 S.E. 679 (1921).

In the instant case, the court is satisfied that plaintiff has proven both elements of the analysis and has done so by the appropriate level of proof.

## I. *Secondary Meaning of "Traveller's"*

A name takes on a secondary meaning for the purposes of an unfair competition case "when [it has] become associated with the origin of the goods or services, rather than with the goods or services themselves." *Rosso*, 200 Va. 159, 164 S.E.2d 776, 780. While the result in *Rosso* is contrary to that of this court, that case can be readily distinguished from the instant case. The *Rosso* court found no unfair competition because the word "Giant" had not acquired a secondary meaning. 200 Va. 159, 166 S.E.2d 776, 782. However, the court went further to state that "Giant" was used as an adjective, and that the entire name of the plaintiff's enterprise, "Giant Open Air Market" *had* acquired a secondary meaning. *Id.* In the instance case, the entire name of plaintiff's restaurant, "Traveller's" or "Traveller's Restaurant", has also acquired secondary meaning within the reasoning of *Rosso*.

In deciding whether or not a term or word has acquired a secondary meaning, the court must determine whether a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise. *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 161 (E.D. Va. 1962). Furthermore, where the mark is "fanciful" in that it does not relate directly in its inherent meaning with the goods or services being provided, then it is considered a "strong" mark, and is more susceptible to acquisition of a secondary

meaning. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988).

The evidence before the court supports plaintiff's use of the word "Traveller", the name of · General Robert E. Lee's horse, cannot be characterized as descriptive of the type of business which they are pursuing, but is in fact "fanciful." Nonetheless, the plaintiff's contentions to this end are based upon testimony at the hearing and affidavits presented to the court. Defendant's use of the word "Traveller's" in its trade name has caused numerous individuals and enterprises to presume a connection between the plaintiff's and defendant's businesses. This confusion occurred because, as was testified to by Paul Kilborn and Helen Inconstanti, the public associates the name "Traveller's" to plaintiff's restaurant. In his affidavit Fred R. Kozak stated that he had been under the impression that the restaurants were related, and that he "looked forward to trying Traveller's Alley Cafe for lunch one day thinking that it would be a good place to have a less expensive lunch of the same quality of Traveller's. *I wanted to try Traveller's Alley Cafe because of my previous good experience at Traveller's*." (emphasis added) (Exhibit A to Plaintiff's Post Trial Memorandum). Clearly the name "Traveller's" had acquired a meaning that associated food and service of quality from a particular source. *See also* affidavits of Forepaugh and McDaniel.

By opening a restaurant selling the same product; *i.e.*, prepared food, under a name that consists primarily of the name of plaintiff's establishment, defendant clearly benefits from the stimulation of interest and inquiry from those familiar with the plaintiff's reputation. *Food Fair*, 301 F.2d 156, 161. Based upon that finding the court can come to no conclusion other than the plaintiff's trade name has acquired a secondary meaning through customer contact and extensive advertising.

Plaintiff adopted a non-descriptive "fanciful" name without intrinsically food related meaning and built it into pseudonym for a restaurant of high quality and service, and is entitled to the exclusive use of the term. *See, Safeway Stores Inc. v. Suburban Foods Inc.*, 130 F. Supp. 249 (E.D. Va. 1955).

## II. *Risk of Confusion*

The second test of the analysis is whether there is a "resemblance between [the two names that] is so close that it is likely to confuse a prospective buyer or customer exercising ordinary caution in his dealings." *Rosso & Mastracco, Inc. v. Giant Food Shopping Center of Va., Inc.*, 200 Va. 159, 165, 104 S.E.2d 776, 781 (1958). That the public, vendors and others have been confused by the defendant's use of the name "Traveller's Alley Cafe" is amply shown by the evidence before the court. The testimony of Bruce Forepaugh and Ross-Ann McDaniel, as well as the affidavit of Fred R. Kozak indicate to the court that the confusion exists and will continue to do so. That risk of continuing confusion strongly establishes that the requirement "likelihood of confusion" is satisfied.

The court wishes to note that the confusion can exist despite the different natures of the two operations. It is the risk of association through confusion that injures plaintiff, as much as the cases of actual confusion testified to by plaintiff's witnesses. Control over plaintiff's reputation by plaintiff for quality is an interest that should be protected by the law. *Wesley-Jessen Div. of Schering Corp. v. Bausch and Lomb, Inc.*, 698 F.2d 862, 867 (9th Cir. 1983) (citation omitted) "Even where the infringer's goods are of high quality, the victim has the right to insist that its reputation not be imperiled by another's actions." *Id.*

## III. *Geographic Name as Trademark*

Defendant relies upon Va. Code Ann. § 59.1-79(e)(2) to assert that plaintiff may not appropriate a geographic designation as a protected trademark. Defendant says that it is located next to an alley identified by the City of Richmond as "Traveller's Alley." Its name is taken from the location itself and is therefore geographically descriptive. That argument fails for the following reasons:

First, Section 59.1-79(e)(2) is designed to guide the State Corporation Commission in granting registered trademarks. It does not apply to civil actions in the

courts of the Commonwealth. Defendant cannot assert this statute as a defense to an infringement suit.

Second, plaintiff's name is not solely that of a geographic location. It is a proper name that has acquired a secondary meaning. The significance of the name arises out of the reputation of plaintiff's restaurant, not the location.

Where a name that was derived from a proper name of a geographic location has acquired a secondary meaning, a newcomer is not entitled to use that name where it could lead to confusion of the public. *American Waltham Watch Co. v. United States Watch Co.*, 172 Mass. 581, 582, 53 N.E. 141, 142 (1899). Where the use of an otherwise nonprotectible term could mislead the plaintiff's customers to another shop, then he may exclude others from the use of that term. *Id.* There is ample evidence of this phenomenon having occurred numerous times, as discussed, *supra*, and that there is a substantial likelihood that it will occur again in the future.

*Conclusion*

Plaintiff has met the burden of proof that defendant has infringed upon its trade-name and has established the right to have a preliminary injunction issue.[1] The court will issue an injunction with the following provision:

1. Defendant, its agents, employees, successors and assigns will be enjoined and restrained from:

a. using in any manner on or in connection with any goods or services the name "Traveller's" in any spelling, any variation or colorable imitation of the name or any confusingly similar name, either alone or in combination with any word or design.

b. using in any manner on or in connection with any goods or services:

(1) Plaintiff's oval sign (*see*, Plaintiff's exhibit 2) with lettering and any variation or colorable

---

[1] This matter was presented as a request for a preliminary injunction. Unless all agree, the court's decision cannot form the basis for the issuance of a permanent injunction without trial. Counsel are requested to discuss this and submit an order in conformity with their agreement and this opinion.

imitation of this sign, either alone or in combination with any word or design.

(2) Plaintiff's style of menu, and any variation or colorable imitation of this design, either alone, by any component part, or in combination with any word or design. (Plaintiff's exhibit 4).

(3) Plaintiff's horse design, and any variation or colorable imitation of the design, alone or in combination with any other design.

c. Doing any act or making in any manner, whatsoever, any statement or representation that is likely to lead the public to believe that the defendant's goods, business or services are in any manner approved, sponsored, licensed, authorized or franchised by or in any way connected, associated or affiliated for any purpose with plaintiffs, plaintiffs' goods, businesses or services.

d. The injunction shall remain in effect for six months unless extended, modified or vacated.

e. Plaintiff shall post a bond with the clerk of this court with corporate surety or cash to protect the defendant from losses or damages which may be occasioned by this injunction should defendant prevail.

Each party shall bear its own costs and attorneys fees.